IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
(FORT WORTH DIVISION)

| | | |
|---|---|---|
| CHARLES STANLEY PAINTER, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # _____ |
| | § | |
| DELAWARE NORTH COMPANIES and | § | |
| JOHN DOES 1-5, | § | |
| Defendants. | § | |

## COMPLAINT

Plaintiff CHARLES STANLEY PAINTER files this Complaint against DELAWARE NORTH COMPANY and various unknown JOHN DOE Defendants, and for cause of action, would respectfully show the Court the following:

### Nature of the Case

1.     This is a Texas diversity, products liability, personal injury lawsuit arising out of Plaintiff's ingestion of deleterious and contaminated food at Texas Rangers Stadium, 1000 Ballpark Way, Arlington, Tarrant County, Texas, on July 25, 2012. As a result of his ingestion, he developed, not only food poisoning, which is horrible albeit normally transitory, but also a serious, permanent, incurable condition known as reactive arthritis

### Parties

2.     Plaintiff Charles Stanley Painter is a citizen of Huntsville, Alabama.

3.     Defendant Delaware North Companies is a national food service company that is headquartered in Buffalo, New York. Through its affiliates, subsidiaries, divisions, and franchisees it provides fan food service at a number of sports stadium and facilities across the United States, including Texas Rangers Stadium in Arlington, Texas.

4.     Defendant John Does 1-5 are other individuals and/or companies that distributed, produced, and/or otherwise participated in the provision of contaminated food products that

ultimately were ingested by Stan Painter on July 25, 2012 at Texas Rangers Stadium. These individuals and/or companies are currently unknown and Plaintiff is without the ability to learn their identities at this time without benefit of formal discovery. Once their identities are discovered, leave will be sought to amend this Complaint and name them properly.

**Jurisdiction and Venue**

5.      Jurisdiction is based on diversity of citizenship and 28 USC § 1332. The amount in controversy, exclusive of interest and costs, is substantially in excess of Seventy-Five Thousand Dollars ($75,000). Venue is permissible in this District pursuant to 28 U.S.C. § 1391(a)(2).

**Facts**

Suit has been necessitated by the following sequence of events.

**America's Favorite Past Time Leads to Stan Painter's "Full Time" Problem**

6.      On July 23, 2012, Stan Painter and a number of his colleagues from across the country attended a forum/workshop in Dallas, Texas. Ironically enough, Stan and the others are meat inspectors who were in Dallas representing the National Joint Council of Food Inspections Locals and were meeting with members of the USDA's Food Safety Inspection Service Agency. They attended all-day meetings on July 24, July 25, and July 26. Stan ate granola bars for breakfast, they dined at a food court for lunch, and ate together most evenings.

7.      On the evening of July 25th, the men attended a Rangers baseball game, the only real outing. Stan and the others, along with the spouse of one of the men, were seated in a VIP "all you can eat" buffet area of the stadium. They wore special wristbands to identify them to the food service people. The food service was in an open-air breezeway that was covered. The hot food bar was separate from the cold bar. The beverage area was like a concession stand with stadium employees handing out drinks, and the soda was self-serve. (Exhibit 1 – Ticket Stub).

8.      While there, Stan consumed a couple of chicken patty sandwiches, another sandwich with a round patty that he assumed was pork, some cotton candy, and some nachos with jalapeno peppers.  Stan and two of the other men, Joe Pauley and Trent Berhow all consumed the chicken patty sandwich and all three contracted food poisoning.  The other men recovered.  Unfortunately, Stan Painter did not. This may well be because his body's natural immune system was already somewhat compromised.  (Exhibit 2 – Witness Statements from Schelling, Hosmer, and Berhow); (Exhibit 3 – Stan's Report of Illness to Arlington).

9.      Stan was somehow able to make his flight home on July 27, but his symptoms persisted, and the stomach issues continued for about two weeks. On August 13, 2012, approximately three weeks after his acute bout of foodborne illness, Stan began experiencing pain in his left pointer finger and left wrist.  It was so painful that he was unable to sleep.  The following day, he began experiencing pain in his back and neck.  At this point in time, he was at a convention in Las Vegas, and, due to the pain, went to a walk-in clinic near his hotel.  He was given Prednisone and antibiotics.

10.      On Monday, August 13, 2012, Stan's right finger and wrist started hurting.  On or about Thursday, August 16, his eyes started to hurt and became quite red and dry, and the pain began in his ankles, knees, and feet.  Four days later, he began experiencing pain in his back, neck and his right hand.  By August 19, 2012, back at home in Crossville, Alabama, he was unable to get out of bed.

11.      On August 20, 2012, Mr. Painter contacted his physician, Dr. James Willig, who insisted that he come to his office immediately.  A friend accompanied him to the doctor's office.  Upon seeing Stan, Dr. Willig expressed surprise in the condition of his eyes, symptoms that Plaintiff had not mentioned over the phone.

12.     After examining him, Dr. Willig asked if he had experienced any kind of stomach-like illness in the last few weeks.  Stan told him about the food poisoning at the Rangers game. Dr. Willig diagnosed Stan with reactive arthritis and referred him on to two specialists, *i.e.*, rheumatologist Dr. Maria Danila and eye specialist Dr. Priscilla Fowler. Both concurred with Dr. Willig's diagnosis of reactive arthritis.

13.     Reactive arthritis is a painful form of inflammatory arthritis (joint pain and swelling).  It is normally triggered by a "reaction" to an infection in another part of the body – most often intestines, genitals or urinary tract. An intestinal infection usually presents as diarrhea and is transmitted by bacterial organisms in contaminated food, such as Salmonella, Shigella, Yersinia, and Campylobacter.  The signs and symptoms of reactive arthritis typically start one to three weeks after exposure to a triggering infection and may include:

*       Joint pain and stiffness in the knees, ankles, feet and lower back
*       Eye inflammation
*       Urinary problems
*       Swollen toes and fingers

Thus, both the timing and the symptomatology of Stan Painter's presentation fit this signature pattern.

14.     There are multiple potential causes of reactive arthritis, and they are not all fully known or well understood.  However, it is generally accepted that food poisoning is one very definite cause, and, in the case of Stan Painter, it is the most likely cause.

15.     Mr. Painter's doctors put him on Prednisone starting at 20 mg a day and reaching as high as 80 mg a day just to manage the pain.  He experienced a dramatic loss in weight and had no option but to continue the large doses of Prednisone for almost 6 months.  He is now receiving injections of the biologic medication, Humira, bi-monthly to deal with the symptoms of the Reactive Arthritis.

16.     The prognosis for individuals with reactive arthritis vary.  Some recover fully from the initial flares and are symptom-free within a year. Others, however, have chronic, severe symptoms that are difficult to control with treatment and may cause joint damage.  Stan Painter has now suffered with this disease for nearly two years.  It is, thus, likely, that he has a permanent and incurable condition.

17.     As a result of this condition, Plaintiff Painter has incurred, and will continue to incur medical expenses.  He has also sustained, and will likely sustain, a loss of earnings, and/or earning power.  His physical activities have become somewhat limited and he has suffered a permanent diminishment in the quality of his life. Plaintiff sues to recover all elements of damages under the law.

### Delaware North Was on "Notice" of Food Safety Problems

18.     Stan Painter's food poisoning incident was not an isolated problem at Rangers Stadium.  To the contrary, Delaware North was on notice long before Stan and his friends came to the game that July evening that they had a food safety problem.

19.     Approximately one year before, the food service providers at the Rangers Ballpark had been reprimanded by the City of Arlington Health Division for both cold and hot "holding violations," as well as extreme problems with hand washing. They also noted that the same people who were exchanging money with the fans were also handling and serving their food without adequate hand washing or other safety protections.

20.     Numerous email exchanges between Barbara Martindale with the Health Department and Casey Rapp, the Operations Manager for the food service at the stadium show that there was resistance by food service to cooperate with the Health Department's concerns over food safety issues. Instead of taking the Health Department's concerns seriously, the food service people argued that it would take the fans back "to the old days."

21.     The Health Department also recommended there be two employees involved, so one could wash up and handle food while the other handled the money.  But Defendant(s) chose not to heed this advice.  Thus, Defendant(s) deliberately understaffed the food service business in a way that compromised food quality and safety.  On information and belief, it is alleged that Defendant(s) chose to do this in order to save money and increase profits.  (Exhibit 4 – Hotdog Complaint and Reprimand).

22.     More recently, in June of 2012, the month before Stan and his friends went to the game, a woman attended a Rangers game and sat in the same "all-you-can-eat" section of the ballpark.  According to her email complaint to the City Health Department, her brother, who is a health code enforcer in Dallas and was attending the game with her, "was appalled at the conditions." In her online complaint to the City of Arlington, she describes old used boxes of buns, available for guests to reach in and grab without tongs, uncovered queso, hot dogs and chicken breasts, and swarming flies. She elaborated saying that "it was awful….it's an insult to the health department and a blatant lack of respect for their fans."  (Exhibit 5 – June 2012 Complaint).

23.     In addition to the violations that the Arlington Health Department cited in 2012, two years prior, in 2010, ESPN did a report examining the health inspection reports of all of the Major League Baseball Stadiums.  At the Texas Rangers Ballpark in Arlington, 62% of the vendors received critical violations.  (Exhibit 6 – ESPN Report).

**Legal Theories/Causes of Action**

The foregoing facts are cognizable under several, alternative theories of liability in Texas, as follows:

24.     FIRST:  STRICT LIABILITY.  Texas law has long imposed strict liability, without regard to fault, on businesses or vendors who provide deleterious or contaminated food

products to the public. Defendant(s) did serve contaminated or deleterious food to Plaintiff, and this food was a producing cause of his injuries and concomitant damages. Thus, he sues under this well-recognized theory of law.

25.    SECOND:  BREACH OF WARRANTY.  Texas law implies that food served to citizens and guests shall be "merchantable", and fit for the ordinary and particular purposes of fan consumption. The food served to Plaintiff and his friends did not live up to this warranty, and was, indeed, a proximate cause of his injuries and damages. Thus, suit is also brought under this alternative theory.

26.    THIRD:  NEGLIGENCE.  As noted in the chronicling of facts set forth above, in the summer of 2012 and before, Defendant Delaware North was on notice from both fan complaints and health department inquiries that it had a significant food safety problem in Rangers Stadium. It knew that it was violating the Food Safety Code which is negligence *per se*. It also knew that it was deliberately understaffed, and was failing to take the same precautions that an ordinarily, prudent food service vendor would and should take to protect the food consuming fans. Its conduct was "negligent" under the law, and such negligence was a proximate cause of Plaintiff's injuries and damages. Therefore, suit is brought under this theory as well.

27.    FOURTH:  GROSS NEGLIGENCE.  The already known evidence is both clear and convincing about the fact that Defendant(s) not only knew that it had a food safety problem, but that it deliberately perpetuated that problem. This constitutes gross negligence within the meaning of § 41.003(a)(3) TEX. CIV. PRAC. & REM. CODE, and warrants an imposition of punitive or exemplary damages.

### **Damages**

28.    Plaintiff sues to recover all elements of damages under Texas law.  The amount is substantially in excess of the jurisdictional threshold for this federal court, and the *ad damnum*

-8-

will be particularized in the disclosures, discovery, or pleadings, as defense counsel may require. Additionally, as noted above, upon a finding of requisite culpability, the trier of fact may choose to impose punitive or exemplary damages.

## Jury Trial Demanded

29.    Plaintiff invokes his constitutional right to trial by jury of all issues of fact in this case.

WHEREFORE, Plaintiff Charles Stanley Painter prays that Defendant Delaware North, and the John Doe Defendants once their identities are determined, be cited to appear and answer herein, and that upon the final trial of this case, a Final Judgment be entered by this Court in his favor and against Defendant(s) for all actual and exemplary damages, plus prejudgment interest and costs of court.

Respectfully submitted,

THE VICKERY LAW FIRM

*/s/ Arnold Anderson Vickery*
Arnold Anderson Vickery
Texas Bar No. 20571800
Fred H. Shepherd
Texas Bar No. 24033056
10000 Memorial Dr., Suite 750
Houston, TX  77024
Telephone:  713-526-1100
Facsimile:  713-523-5939
Email:  andy@justiceseekers.com
Email:  fred@justiceseekers.com
*Counsel for Plaintiff*